# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UST-MAMIYA, INC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-2745-B |
| | § | |
| TRUE SPORTS, INC., and PREMIUM | § | |
| GOLF MANAGEMENT CO., LTD, | § | |
| D/B/A PGMC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants True Sports, Inc., and Premium Golf Management Company's (PGMC) Motion to Dismiss (Doc. 11). For the reasons that follow, the Court **GRANTS** the motion to dismiss (Doc. 11) and **DISMISSES** the complaint **WITHOUT PREJUDICE**.

### I.

### FACTUAL BACKGROUND[1]

Plaintiff UST-Mamiya (UST) designs and manufactures golf equipment, including the ACCRA-branded golf club shaft. Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 9. On January 1, 2008, UST and PGMC entered into an Asset Purchase Agreement ("the contract"), in which PGMC purchased certain rights related to the ACCRA brand. *Id.* The contract contained a right of first refusal on behalf of UST, which reads, in relevant part:

---

[1] All facts are taken from Plaintiff's Original Petition (Doc. 1, Notice of Removal, Ex.2) and are taken as true for purposes of this motion.

6.7 <u>Transfer Restrictions:</u> PGMC shall not sell, assign, license or otherwise transfer any interest in the ACCRA Marks until the date that the Notes are fully paid and satisfied. Thereater, if PGMC obtains a bona fide offer from a third party for the acquisition of the ACCRA Marks ("Purchase Offer"), PGMC shall forward to UST the identity of the offerer of the Purchase Offer and the terms and conditions thereof. UST shall then have thirty (30) days in which to notify PGMC of its election to re-acquire the ACCRA Marks under the same terms and conditions of the Purchase Offer.

*Id.* ¶ 10; *see also* Doc. 1, Notice of Removal, Ex. 2, Asset Purchase Agreement, 5.[2]

UST alleges that after the contract was signed, PGMC transferred its interest in the ACCRA marks to Defendant True Sports, without making UST aware of the transaction or "the Purchase Offer information as required under the terms of the Contract." Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 10. UST claims that it first learned of the transaction "after it was complete and True Sports began issuing press releases about it." *Id.*

Although UST does not attach Defendants' transaction to its complaint or mention the transaction by name, Defendants in their motion explain that the transaction was a stock sale agreement, referenced as the Share Purchase Agreement (SPA), between the two Defendants. *See* Doc. 12, Defs.' Br., 1. The SPA is attached to Defendants' motion. *See* Doc. 15, Ex. B, SPA.

After learning of the transaction, UST sent True Sports a letter, dated July 25, 2019, to request information about the transaction. Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 11. True Sports responded by saying "that PGMC and True Sport do not believe that the Contract is enforceable any longer" and "refusing [to] provide the requested information." *Id.*

---

[2] In the complaint, when quoting Section 6.7 of the contract, UST misspells "ACCRA" as "ACDRA" and "ACRA." *See* Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 10. However, the contract properly spells the term as "ACCRA." *See* Doc. 1, Notice of Removal, Ex., 2, Asset Purchase Agreement, 5.

Subsequently, UST brought two causes of action: (1) breach of contract based on the alleged breach of the right of first refusal and (2) declaratory judgment that the contract is enforceable and that Section 6.7 of the contract required PGMC to provide the requested information to UST before True Sports acquired the ACCRA marks. *Id.* ¶¶ 12–18.

Defendants then brought this Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Doc. 11, Defs.' Mot. to Dismiss. All briefing has been submitted and the motion is ripe for review.

## II.

## LEGAL STANDARD

A.    *Federal Rule of Civil Procedure 12(b)(6)*

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." *Id.* 12(b)(6). To survive a 12(b)(6) motion, "enough facts to state a claim to relief that is plausible on its face" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak*

*Cnty. Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

The Fifth Circuit has held that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted). Essentially, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal citation omitted).

B.      *Federal Rule of Civil Procedure 12(b)(2)*

Federal Rule of Civil Procedure 12(b)(2) allows for the dismissal of an action in which the court lacks personal jurisdiction over the defendant. A federal court may assert jurisdiction over a nonresident defendant in a diversity suit if the state's long-arm statute applies and due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). Texas courts have interpreted the Texas long-arm statute as "extending to the limits of due process." *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir. 1990). Accordingly, to determine whether it may assert jurisdiction under the Texas long-arm statute, a federal court must determine whether jurisdiction comports with federal constitutional guarantees of due process. *Id.* at 216.

"The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial

justice.'" *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Both prongs of the due process test must be met" for the Court to exercise personal jurisdiction over a defendant. *See id.*

A nonresident defendant's minimum contacts may either support an assertion of specific or general jurisdiction. *WNS Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989). A court may exercise specific jurisdiction when a cause of action arises out of a defendant's purposeful contacts with the forum. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361–62 (5th Cir. 1990). Alternatively, a court is said to have general jurisdiction when a defendant has engaged in continuous and systematic contacts with the forum. *Id.*

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts. *WNS*, 884 F.2d at 203. Further, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs.*, 754 F.2d at 546 (citations omitted).

## III.

## ANALYSIS

Defendants believe that the complaint must be dismissed against both parties because UST's right of first refusal was never triggered when PGMC sold its stock to True Sports under the SPA. Doc. 12, Defs.' Br., 5–8. Alternatively, Defendants argue that True Sports should be dismissed from the case because (1) True Sports is not a party to the UST–PGMC contract, and (2) the Court lacks personal jurisdiction over True Sports. *Id.* at 9–13.

The Court concludes that UST's right of first refusal was never triggered by Defendants' SPA.

However, because the Court concludes that UST's claims should be dismissed without prejudice, the Court also reaches True-Sports' specific arguments. As to those, the Court concludes that True Sports cannot be held liable under the contract and is not subject to the personal jurisdiction of this Court as currently pled.

A.     *Motion to Dismiss for Failure to State a Breach-of-Contract Claim*

To withstand a motion to dismiss on its breach of contract claim, UST must plead "(1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In Re Staley*, 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.).

1.     In analyzing UST's breach-of-contract claim, the Court can consider the SPA.

The first issue is whether the Court can consider the SPA between Defendants PGMC and True Sports. *See* Doc. 15, Ex. B, SPA. The agreement is not attached to UST's complaint; rather, it is attached to and relied on in Defendants' motion to dismiss. *See generally* Doc. 12, Defs'. Br.

Because the SPA was not attached to the complaint, UST believes that the SPA cannot be properly considered in deciding Defendants' motion to dismiss. Doc. 18, Pl.'s Resp., 12. UST contends that if this Court were to consider the SPA, the Court would be converting Defendants' motion into one for summary judgment, and UST has not had time to develop its own evidence. *Id.* at 14.

The Court disagrees, and concludes that it can consider the SPA when deciding the motion to dismiss. Although "[a] court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion[,] . . . [d]ocuments 'attached[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'"

*Starling v. JPMorgan Chase Bank, N.A.*, 2013 WL 4494525, at *2 (N.D. Tex. Aug. 22, 2013) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted)). When a document attached to a motion to dismiss is "necessary to establish an element of one of the plaintiff's claims," and is not "merely evidence of an element of the plaintiff's claim," a court may properly consider the document when ruling on a motion to dismiss. *Id.* (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)).

Here, the SPA is "necessary to establish an element of" UST's breach-of-contract claim: specifically, the breach element. *See id.* UST alleges that "[b]y failing to give UST the right to acquire the ACCRA Marks *on the terms sold to True Sports*, PGMC materially breached the Contract." Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 13 (emphasis added). Thus, to establish a breach by PGMC, UST must rely on the terms by which the ACCRA Marks were allegedly sold to True Sports. And these terms are in the SPA—the agreement by which UST alleges PGMC transferred its interest in the ACCRA Marks to True Sports. *See* Doc. 15, Ex. B, SPA. UST admits as much in its complaint, when it alleges that "PGMC never made UST aware of True Sport's acquisition of the ACCRA Marks or provided the Purchase Offer information as required under the terms of the Contract." *Id.* ¶ 10.[3]

Alternatively, UST argues that the SPA "is hearsay and an unauthenticated document that is unsupported by any witness and should be excluded." Doc. 18, Pl.'s Resp., 6 (citing FED. R. EVIDENCE 801, 802, 901). However, UST does not have any evidence that the agreement is

---

[3] It is irrelevant that UST does not mention the SPA in its complaint by name. *See Starling*, 2013 WL 4494525, at *3 (allowing documents attached to a defendant's motion to dismiss to be considered and noting that the plaintiffs referenced those documents in their complaint, "albeit not by name").

substantively invalid—instead, UST relies on purely technical evidentiary grounds. Technical objections do not (1) prevent the Court from considering the SPA at the motion to dismiss stage or (2) convert the current motion into one for summary judgment. *See Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 812 (N.D. Tex. 2009) (finding that the court could consider, over objection, the same type of evidence at the 12(b)(6) stage "without converting" it into one for summary judgment where the plaintiffs "point[ed] out that the document is unauthenticated, [but] have not argued that it is not in fact authentic"); *see also Borders v. Chase Home Fin. LLC*, 2009 WL 1870916, at *4 (E.D. La. June 29, 2009).

Because UST refers to the SPA in its complaint, the agreement is necessary for UST to establish the breach element of its breach-of-contract claim. Additionally, UST has not challenged the substantive validity of the SPA, so the Court finds that it can properly consider the SPA in deciding Defendants' Rule 12(b)(6) motion. *See Starling*, 2013 WL 4494525, at *2.

### 2. UST's right of first refusal was not triggered by the SPA.

With the SPA properly before the Court, the Court will now evaluate the parties' arguments on the merits. Defendants argue that UST cannot show that a breach of the contract ever occurred. Doc. 12, Def.'s Br., 5. Defendants believe that UST's right of first refusal was not triggered by the SPA. *Id.* at 6. Specifically, they argue that Section 6.7 of the contract "is unambiguous: UST's right of first refusal, and PGMC's obligation to provide UST information, is triggered when a Purchase Offer is made *for the ACCRA Marks.*" *Id.* at 7 (emphasis in original). The right of first refusal, Defendants contend, is *not* triggered by "the acquisition of PGMC itself (i.e., PGMC's sale of all of its stock to True Sports)." *Id.* Defendants note that the SPA "was a contract for True Sports to buy the 'Purchased Shares,' defined as 'all of the issued and outstanding shares in the capital of

- 8 -

[PGMC].'" *Id.* at 8 (citing Doc. 15, Ex. B, SPA, ¶ 1.01 (vvv)). Defendants argue that under Texas law, courts are to construe rights of first refusal narrowly, and that "the sale of stock does *not* trigger rights of first refusal." *Id.* at 8–9 (citing *Tenneco Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 646 (Tex. 1996)) (emphasis in original).

UST has two responses to Defendants' motion to dismiss. First, UST points out that it has pled that PGMC did not "provide UST with the right of first refusal and thus breached the contract, and that True Sports is liable as the successor entity." Doc. 18, Pl.'s Resp., 10 (citing Doc. 1, Notice of Removal, Ex. 2, Original Pet. ¶¶ 13–15). Moreover, UST notes that "with regard to the final element of the breach of contract claim, [UST] plead[s] that Defendants['] breach cause [sic] them damages." *Id.* (citing Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 15). To UST, "[t]hese factual allegations show a right to relieve [sic] that is plausible." *Id.*

Second, UST argues that the SPA does not necessitate dismissal. *Id.* UST relies on a New Mexico case, *H-B-S Partnership v. Aircoa Hospitality Services, Inc.*, 114 P.3d 306 (N.M. Ct. App. 2005). *See* Doc. 18, Pl.'s Resp., 13. UST points out that the right of first refusal is "similarly broad" to the one in *H-B-S Partnership* that was triggered by a similar transaction, in that its right of first refusal is triggered if PGMC "otherwise transfer[s] any interest in the ACCRA Marks . . . ." *Id.*; *see also* Doc. 1, Original, Notice of Removal, Ex. 2, Original Pet., ¶ 10. Alternatively, UST argues that "the phrase 'otherwise transfer any interest'" is ambiguous and thus subject to interpretation by the Court upon the parties' further submission of evidence. Doc. 18, Pl.'s Resp., 18.

The Court concludes that the SPA does not violate UST's contractual right of first refusal. Because this Court must apply Texas law here, UST's reliance on a New Mexico case—*H-B-S Partnership*—is misplaced. Moreover, this Court disagrees that the right of first refusal here is as broad

as that in *H-B-S*, as UST contends. *See id.* In *H-B-S Partnership*, the court noted that the right of first refusal there "could [not] be broader," as the contract itself said that the right applied to "the transfer of any equity interest . . . if the transfer . . . results in a change in control of such corporation." 114 P.3d at 314. Here, on the other hand, UST has not pointed to the Court to any provision in the contract that contains a change of control provision.[4] Additionally, that UST has pled that PGMC did not give UST a right of first refusal "and thus breached the contract," Doc. 18, Pl.'s Resp., 10, does not suffice to survive a motion to dismiss. *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Most importantly, however, the Court finds that the Texas Supreme Court's *Tenneco* decision is instructive. 925 S.W.2d 640. In *Tenneco*, Tenneco Oil was one of many companies that held an ownership stake in a gas plant. *Id.* at 641. Each company also held a right of first refusal, in which "a plant owner had to make its share available to the other owners before selling to a non-owner." *Id.* at 642. Tenneco, however, first transferred all of its stock to its subsidiary. *Id.* Tenneco then sold all the subsidiary's stock to a third company, which then sold all of the stock to a fourth company. *Id.* The other owners of the gas plant sued on the grounds that the last two transfers violated their rights of first refusal. *Id.*

The Texas Supreme Court held that "the sale of a corporation's stock does not trigger rights of first refusal," *id.* at 646, and thus the defendants' right of first refusal was not violated. *Id.* at 645. The Court explained that a "purchaser of stock in a corporation does not purchase any portion of the corporation's assets, nor is a sale of all the stock of a corporation a sale of the physical properties

---

[4] Texas courts distinguish between a change of control provision and a transfer of assets provision. *See Tenneco*, 925 S.W.2d at 646 (explaining how a contract "provides that only a transfer of an ownership interest triggers the preferential right to purchase; it says nothing about a change in stockholders").

of the corporation." *Id.* (quotations and citations omitted). "The transaction was not, therefore, a transfer of Tenneco's [] ownership interest" in the gas plant that would trigger the right of first refusal. *Id.*

The same can be said of the stock transfer from PGMC to True Sports. The SPA states that PGMC "convenant[s] and agree[s] that they will sell, assign and transfer to [True Sports] and the Purchaser convenants and agrees that it will purchase from [PGMC], all of Purchased Shares." Doc. 15, Ex. B, SPA ¶ 2.01. "Purchased Shares" are "all of the issued and outstanding shares in the capital of the Corporation, being sold by [PGMC] and purchased by [True Sports]." *Id.* ¶ 1.01 (vvv). Thus, by the plain terms of the SPA, PGMC was selling its stock—not its assets—to True Sports. *See Tenneco*, 925 S.W.2d at 645.

UST's right of first refusal is not triggered by such a stock sale. Section 6.7 of the contract states:

> PGMC shall not sell, assign, license or otherwise transfer any interest in the ACCRA Marks until the date that the Notes are fully paid and satisfied. Thereafter, if PGMC obtains a bona fide offer from a third party for the acquisition of the ACCRA Marks ("Purchase Offer"), PGMC shall forward to UST the identity of the offerer of the Purchase Offer and the terms and conditions thereof.

Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 10. Similarly, the right of first refusal in *Tenneco* stated that:

> Except as provided in Section 12.6 hereof, if any Owner should desire to sell, transfer or assign all or any part of its Ownership Interest, the other Owners shall have the prior and preferential right and option to purchase proportionately the interest to be sold by such Owner upon the same terms and conditions as the bona prospective purchase or purchasers (collectively "Offeror") are offered by such Owner . . . .

925 S.W.2d at 645. Thus, like the right of first refusal in *Tenneco*, UST's right of first refusal

"provides that only a transfer of an ownership interest [in the ACCRA Marks] triggers the preferential right to purchase; it says nothing about a change in stockholders." *See id.* at 646. There was no asset transfer here; thus, UST's right of first refusal was never triggered by the SPA. *See id.* at 645.

UST believes that any reliance on *Tenneco* is misplaced. Doc. 18, Pl.'s Resp., 13–14. First, UST believes that its right of first refusal is broader than the one in *Tenneco*—while the one in *Tenneco* says "transfer," here, the right of first refusal says "*otherwise* transfer." *Id.* (emphasis added). However, in light of the fact that rights of first refusal are "strictly construed" because such rights are "restraint[s] on alienation," *Conocophillips Co. v. Dahlberg*, 2011 WL 710604, at *1 n.2 (S.D. Tex. Feb. 22, 2011) (citation omitted), the simple addition of the "otherwise" language does nothing to expand the scope of UST's right of first refusal. *See Tenneco*, 925 S.W.2d at 646 (holding that "stock sales do not invoke preemptive rights" and noting how "[a] contrary conclusion is an unwarranted impingement on the free transfer of stock").

Next, UST notes that *Tenneco* was decided at the summary judgment stage, not the Rule 12(b)(6) stage. Doc. 18, Pl.'s Resp., 14. Although this is true, the Court finds that this is a distinction without relevance. The court in *Tenneco* relied solely on the language of the right of first refusal, and the nature of the transaction that allegedly violated the right. *See Tenneco*, 925 S.W.2d at 646. While the *Tenneco* court relied on an uncontroverted affidavit by the defendants that the transaction did not transfer assets, the court implied that a copy of the questioned transaction would have sufficed. *See id.* ("The Tenneco and Enron Defendants proved that the transfer was a stock sale without including a copy of the relevant agreement in the summary judgment evidence."). Here, the Court is doing what the *Tenneco* court contemplated: analyzing the right of first refusal and the language

of the questioned transaction, the SPA.

Additionally, in developing its argument that the Court must wait until summary judgment to decide whether the right of first refusal was triggered, UST points to "True Sports' press releases that highlight its acquisition of the ACCRA brand" and "the intent of the parties when they entered into the [SPA]." Doc. 18, Pl.'s Resp., 18. However, the court in *Tenneco* specifically held that such evidence was irrelevant. The court explained that "even if the [press] releases had portrayed the transfer as an asset sale, press releases do not govern the legal status of a transaction." *Tenneco*, 925 S.W.2d at 645. And the court "expressly disapprove[d] of" a Texas Court of Appeals decision that looked to parties' intent. *Id.* (rejecting the reasoning in *Galveston Terminals, Inc. v. Tenneco Oil Co.*, 904 S.W.2d 787 (Tex. App—Houston [1st Dist.] 1995), *set aside without reference to the merits*, 922 S.W.2d 549 (Tex. 1996)).

Thus, the *Tenneco* court expressly rejected the type of evidence UST argues is relevant to show assets were transferred, and in so doing, made it clear that courts should look only to the plain language of the right of first refusal and the questioned transaction to determine whether there was a breach of the right. Nothing about the procedural posture of *Tenneco* prevents this Court from relying upon the case's reasoning for its own legal conclusions.

Finally, UST points out that *Tenneco* involved "down-the-line transfers," Doc. 18, Pl.'s Resp., 14, which involved transfers to multiple subsidiaries. *See Tenneco*, 925 S.W.2d at 642.[5] However, the court in *Tenneco* did not make much—if anything—of this fact. The court concluded that the

---

[5] The case describes the transactions as follows: "Tenneco Oil sold all of Tenneco Natural Gas Liquids' stock to Enron Gas Processing Company, and Tenneco Natural Gas Liquids' name was changed to Enron Natural Gas Liquids Corporation. In the Third Transfer, Enron Gas Processing sold Enron Natural Gas Liquids' stock to Enron Liquids Pipeline Operating Limited Partnership." *Tenneco*, 925 S.W.2d at 642.

questioned transfers "embodied a stock sale and not a transfer of assets" without any mention of the fact that they might have been "down-the-line transfers." *See id.* at 645. In fact, the *Tenneco* court was explicitly broad in laying out its rule, "holding that the sale of a corporation's stock does not trigger rights of first refusal . . . ." *Id.* at 646. The Court thus finds that the "down-the-line" transfers in *Tenneco* do not change the Court's application of the *Tenneco* rule.

Because the Court finds that *Tenneco* controls, and that the provision in question mirrors that in *Tenneco*, the "otherwise transfer any interest" language here is not ambiguous, as UST conclusively asserts. *See Tenneco*, 925 S.W.2d at 646 (explaining that the "plain language" of the contract "provides that only a transfer of an ownership interest triggers the preferential right to purchase; it says nothing about a change in stockholders"). The contract here—specifically, the right of first refusal—"says nothing about a change in stockholders." *Tenneco*, 925 S.W.2d at 646. While UST "could have included a change-of-control provision in the [contract] that would trigger" its right of first refusal, it did not. *Id.* The stock transfer, as a matter of law, thus did not trigger UST's right of first refusal as to the interests in the ACCRA marks. Accordingly, its breach-of-contract claim must be dismissed.

3.     Whether the claim should be dismissed with or without prejudice.

Defendants believe that the breach-of-contract claim should be dismissed with prejudice, as nothing could alter the Court's conclusion on the "threshold issue" of whether the right of first refusal applies in this case. Doc. 20, Defs' Reply, 12. However, a court should give the plaintiff an opportunity "to amend the complaint under [Federal Rule of Civil Procedure] 15(a) before dismissing the action with prejudice . . . ." *Smith v. Houston Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 576 (S.D. Tex. 2017). A notable exception to this is "when amending a complaint would be futile."

*Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 592 (N.D. Tex. 2004) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)).

Stock transfers do not trigger rights of first refusal for asset transfers. *Tenneco*, 925 S.W.2d at 645–46. However, because UST has not had the opportunity to plead its case within the context of the Court's interpretation of the right of first refusal, the SPA, and *Tenneco*, the Court finds it appropriate to dismiss UST's breach-of-contract claim without prejudice.

Accordingly, the Court **DISMISSES** the breach-of-contract claim against both Defendants **WITHOUT PREJUDICE**. But, as set forth below, there are additional grounds for dismissing True Sports from the case that are unrelated to whether the right of first refusal was triggered by the SPA.

B.    *True Sports-Specific Arguments*

1.    As a third-party to the contract, True Sports cannot be held liable under the contract.

Defendants believe that UST cannot maintain this action against True Sports, as "the entities have no relationship, contractual or otherwise." Doc. 12, Defs.' Br., 9. First, Defendants argue that because True Sports is not a party to the contract, UST's claim for breach of contract against True Sports should be dismissed. *Id.* at 10.

Defendants acknowledge that the contract contains a provision that reads, "This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns." *Id.* (citing, *inter alia*, Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 8). But Defendants argue that this provision does not apply to True Sports because True Sports is not PGMC's assignee. Defendants argue that "when an acquirer purchases all of another company's stock, it does *not* acquire the other company's liabilities absent express agreement." *Id.* at 11

(emphasis in original). Defendants point out that the SPA does not have a provision in which True Sports assumes PGMC's liabilities. *Id.* at 12. In fact, Defendants note, the SPA "explicitly provides that 'liability' shall not include obligations on contracts." *Id.* at 12 (citing Doc. 15, Ex. B, SPA, ¶ 20).

In response, UST relies on the plain language of the provision in the contract—i.e. that it "shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns." Doc. 18, Pl.'s Resp., 12.

The Court concludes that True Sports cannot be held liable under the contract as currently pled. "Texas law does not generally recognize successor liability for subsequent purchases of corporate assets." *Renfro v. HCR Pool III Funding Corp.*, 2006 WL 8437652, at *1 (N.D. Tex. Aug. 28, 2006). "However, when the successor corporation expressly assumes the liability of the predecessor corporation, the successor corporation will be liable for the predecessor corporation's liabilities." *Id.* (citing, *inter alia*, TEX. BUS. CORP. ACT ANN. art. 5.10B(1) & (2)).[6] Yet, as previously discussed, "[PGMC's] assets were not acquired," and while the contract has a successor provision, UST has not pled that True Sports assumed PGMC's liabilities in the SPA. *See United States v. Vista Hospice Care, Inc.*, 2014 WL 12580020, at *1 (N.D. Tex. Aug. 4, 2014). Thus, UST's successor argument fails. *See id.*

Accordingly, that True Sports was not a successor under the contract is another ground upon which Defendants' motion to dismiss the complaint against True Sports is **GRANTED WITHOUT**

---

[6] The Texas Business Organizations Code replaced the Texas Business Corporation Act of 2010. *See Information on the Texas Business Organizations Code*, https://www.sos.state.tx.us/corp/boc.shtml (last visited Feb. 13, 2020). The Texas Business Organizations Code contains a similar provision as to that in the Texas Business Corporations Act, stating that "a person acquiring property described by this section may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person." TEX. BUS. ORG. CODE ANN. § 10.254(b). Thus, this Court finds that *Vista* and *Renfro* are still instructive.

**PREJUDICE**.

    2.    <u>UST has not adequately pled that this Court has jurisdiction over True Sports.</u>

Defendants argue that even if True Sports were PGMC's successor under the contract, the Court lacks personal jurisdiction over True Sports. Doc. 12, Defs.' Br., 13. Defendants believe that UST has failed to allege any facts that connect True Sports to Texas. *Id.* UST, Defendants assert, rely only on the fact that PGMC and True Sports do business worldwide, that True Sports acquired all of PGMC's shares, and that the contract contains a successor provision. *Id.* at 13–14 (citing Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶¶ 13–14). However, Defendants conclude that the successor provision does not apply to True Sports, and that "[s]uch nominal conclusory allegations are insufficient to properly establish personal jurisdiction over True Sports." *Id.* at 14.

The Court agrees, and concludes that UST has not sufficiently alleged that the Court has personal jurisdiction over True Sports. Defendants' motion based on personal jurisdiction is not, as UST contends, "procedurally and substantively defective" because it lacks "any affidavit or sworn testimony" and does not deny UST's jurisdictional allegations. Doc. 18, Pl.'s Resp., 15. Rather, it is "[t]he plaintiff [that] has the burden of establishing that the court has personal jurisdiction." *Int'l Energy Ventures Mgmt., LLC v. United Energy Group, Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016). UST must establish personal jurisdiction; True Sports does *not* need to establish that there is *no* personal jurisdiction. Finally, that Defendants might not denied UST's jurisdictional allegations is irrelevant—Defendants are arguing that UST's current allegations do not establish personal jurisdiction. *See* Doc. 13, Defs.' Br., 13.

Thus, this Court proceeds to its analysis as to whether UST has sufficiently pled personal jurisdiction.

### a. General Jurisdiction

UST has failed to adequately plead general jurisdiction. In attempting to do so, UST also argues that an Internet search demonstrates that True Sports hires employees in Texas; attends golf events in Texas; advertises and sells products in Texas; communicates through websites in Texas; advertises its retail and clothing locations in Texas; and issues press releases in Texas. Doc. 18, Pl.'s Resp., at 15–16. Moreover, UST points to the fact that "True Sports advertises that it now owns the ACCRA brand and advertises those products for sale in Texas . . . ." *Id.* at 17.

However, "[a]lthough the placement of a product into the stream of commerce 'may bolster an affiliation germane to *specific* jurisdiction' . . . such contacts 'do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.'" *Daimler AG v. Bauman*, 571 U.S. 117, 132 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011)) (emphasis in *Daimler*). "[G]eneral jurisdiction requires affiliations "'so continuous and systematic" as to render the foreign corporation essentially at home in the forum state.'" *Id.* at 758 n.11 (quoting *Goodyear*, 564 U.S. at 919). Generally, a "corporation is fairly regarded as home" in its "place of incorporation and principal place of business." *Id.* at 137 (quoting *Goodyear*, 564 U.S. at 924).

Thus, although UST has alleged that True Sports has business contacts in Texas, it has failed to allege that True Sports is at home there. True Sports is a Delaware corporation with its principal place of business in Tennessee. Doc. 1, Notice of Removal, ¶ 8. Thus, without any allegations suggesting True Sports is "at home" elsewhere, these two states are where True Sports is subject to general jurisdiction, not Texas. *See Daimler AG*, 571 U.S. at 137.

Accordingly, UST has not established that this Court has general jurisdiction over True Sports.

b. Specific Jurisdiction

UST has not sufficiently alleged that this Court has specific personal jurisdiction over True Sports. UST argues that this Court has jurisdiction over True Sports because True Sports is a successor to the contract. Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 8. Generally, in a breach-of-contract case, "the court must ask whether the nonresident's forum contacts were instrumental in the formation of the contract or its breach." *Lansing Trade Grp., LLC v. 3B Biofuels GmbH & Co., KG*, 612 F. Supp. 2d 813, 821–22 (S.D. Tex. 2009) (citing, *inter alia*, *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Here, UST does not allege that True Sports was involved in the formation of the contract, and it is PGMC who UST alleges breached the contract by violating the right of first refusal. *See* Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 13.

However, "a nonresident defendant corporation not otherwise subject to personal jurisdiction in the forum state becomes so by virtue of succeeding to a corporation that is subject to personal jurisdiction in Texas." *Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co., Inc.*, 163 S.W.3d 120, 129 (Tex. App.—San Antonio 2005). But as has already been discussed, UST has failed to allege that True Sports has succeeded PGMC so as to become liable on the contract at issue here.

Accordingly, UST has failed to allege that this Court has specific personal jurisdiction over True Sports. Because UST has failed to allege either general or specific personal jurisdiction, the Court **GRANTS** Defendants' motion to dismiss the complaint against True Sports **WITHOUT PREJUDICE**. *See J.M. Huber Corp. v. Pan Am. Express, Inc.*, 118 F. Supp. 2d 764, 768 (S.D. Tex. 2000) ("A dismissal for lack of personal jurisdiction is not a dismissal on the merits and must

therefore be without prejudice.") (citation omitted).

B.    *Declaratory Judgment*

UST also brings a declaratory judgment cause of action. *See* Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶¶ 16–18. UST asks the Court to declare that: (1) "the terms of the Contract remain in effect as stated in the Contract, specifically" the right of first refusal; and (2) "that PGMC was required to provide the Purchase Offer information to UST before allowing True Sports to acquire the ACCRA Marks . . . ." *Id.* ¶ 17.

Defendants argue that the declaratory judgment cause of action should also be dismissed. Doc. 12, Defs.' Br., 6 n.5. They characterize UST's declaratory judgment action as "merely a repackaging of UST's breach of contract claim," and that "whether the [contract] remains in effect is irrelevant given that the interpretation of Section 6.7 of the [contract] fails as a matter of law." *Id.*

UST objects, stating that under the Declaratory Judgment Act, on a motion to dismiss, "the only question is whether, on the basis of the allegations, a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment and *not* whether the plaintiff is entitled to a favorable declaration." Doc. 18, Pl.'s Resp., 11 (emphasis in original). UST argues that it has made two requests for declaratory relief under a specific contract, and "under specifically plead circumstances," and thus has met its burden. *Id.*

The Court agrees with Defendants. "The Court has broad discretion in determining whether to entertain a declaratory judgment action under 28 U.S.C. § 2201." *Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, 2008 WL 2434245, at *2 (N.D. Tex. June 17, 2008) (citing *Winton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). "A request for a declaratory judgment need not be permitted if it

adds nothing to the suit." *Merritt, Hawkins & Assocs., LLC v. Gresham*, 2014 WL 685557, at *3 (N.D. Tex. Feb. 21, 2014). Thus, "courts generally dismiss declaratory judgment claims seeking to resolve matters already pending before the court." *Id.*

Here, UST's seeks a declaration that: (1) the contract is enforceable, and (2) "PGMC was required to provide the Purchase Offer information to UST before allowing True Sports to acquire the ACCRA Marks." Doc. 1, Notice of Removal, Ex. 2, Original Pet., ¶ 17. The second sought-after declaration was necessarily decided in the negative when the Court found that the right of first refusal was not triggered by the SPA.

And the first sought-after declaration—that the contract is enforceable—"adds nothing to the suit." *Merritt*, 2014 WL 685557, at *3. As Defendants note, whether the contract is enforceable "is irrelevant given that [UST's] interpretation" of the right of refusal "fails as a matter of law." Doc. 12, Defs.' Br., 6 n.5. In *Merritt*, the court noted that because the plaintiff in a breach-of-contract claim must "prove the existence of a valid contract," "the Court must necessarily determine the enforceability and validity of the contract provisions in dispute to resolve Plaintiff's claims." 2014 WL 685557, at *3. Thus, UST "merely seek[s] declaratory judgment on issues already pending before the Court . . . ." *Id.*

Because the declaratory judgment cause of action merely restates UST's breach-of-contract cause of action and does not add anything to UST's suit, the Court **DISMISSES** the declaratory judgment cause of action **WITHOUT PREJUDICE**.

C.     *Granting Leave to Amend*

The Court has dismissed the breach-of-contract and declaratory judgment claims against both Defendants without prejudice. UST will thus have the opportunity to file a motion for leave to

amend. Local Rule 15.1(b) requires that the proposed amended pleading be attached to the motion as an exhibit.

In deciding whether to file a motion for leave to amend, UST should keep in mind the deficiencies the Court has identified throughout UST's complaint—namely, the allegations that (1) the SPA violated the right of first refusal and (2) True Sports is a proper defendant before the Court, in terms of it being a nonparty to the contract and the Court lacking personal jurisdiction over True Sports. UST has **twenty-one days** from the time in which this order is docketed to file a motion for leave to amend.

## IV.

## CONCLUSION

The Court finds that UST's right of first refusal was not triggered by PGMC's transaction with True Sports. The Court **GRANTS** Defendants' motion to dismiss (Doc. 11). Specifically, the Court **DISMISSES** UST's breach-of-contract claim **WITHOUT PREJUDICE**. Because True Sports was a non-party to the contract and UST has not pled that this Court has personal jurisdiction over True Sports, this is another ground upon which the breach-of-contract claim is **DISMISSED** against True Sports **WITHOUT PREJUDICE.** Lastly, as the declaratory judgment action is merely repetitive of the breach-of-contract cause of action, the Court **GRANTS** Defendants' motion to dismiss the declaratory action **WITHOUT PREJUDICE**.


**SO ORDERED.**

**SIGNED: February 25, 2020**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE